UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION at FRANKFORT

| | | |
|---|---|---|
| GREGORY WILSON | ) | |
| | ) | |
| Plaintiff | ) | Civil Action No. 3:07-CV-78-KKC |
| | ) | |
| V. | ) | |
| | ) | |
| JOHN D. REES, ET AL. | ) | **MEMORANDUM OPINION** |
| | ) | **AND ORDER** |
| Defendants | ) | |

\*\*\*\* \*\*\*\* \*\*\*\* \*\*\*\*

Plaintiff Gregory Wilson is a Kentucky inmate sentenced to death for a kidnapping, robbery, rape and murder he committed in 1987. Wilson filed this civil rights action pursuant to 42 U.S.C. § 1983 to challenge the lethal injection protocol Kentucky intends to utilize in carrying out his death sentence as a violation of the Eighth Amendment's prohibition against "Cruel and Unusual Punishments." [Record No. 1] The Defendants have moved for dismissal or judgment on the pleadings on the grounds that Wilson's claim is time-barred, was not properly exhausted, and fails as a matter of law under the standard announced by the Supreme Court in *Baze v. Rees*, 128 S.Ct. 1520 (2008). [Record No. 25] Wilson has filed his response in opposition [Record No. 28] to which the Defendants have replied. [Record No. 29] The Court will grant the motion on the ground that Wilson's claims are time-barred under controlling Sixth Circuit precedent.

I.  **Factual Background.**

In May 1987, Wilson and Humphrey kidnapped Deborah Pooley at knife point on her way home from work in Newport, Kentucky. The testimony at trial indicated that Wilson robbed and

1

raped the victim in the back seat of her car and then strangled her until she was dead. A jury found the defendants guilty, and Wilson was sentenced to death on the kidnapping and murder counts and consecutive prison terms of 20, 20 and 10 years on the rape, robbery, and conspiracy counts. The Kentucky Supreme Court vacated the death sentence on the kidnapping conviction, but affirmed the death sentence on the murder charge. *Wilson v. Commonwealth*, 836 S.W.2d 872, 876-77 (Ky. 1992). The Supreme Court denied certiorari on April 19, 1993.

Effective March 31, 1998, Kentucky revised its criminal statutes to provide that lethal injection was the presumptive method to carry out a sentence of death:

> (1) (a) Except as provided in paragraph (b) of this subsection, every death sentence shall be executed by continuous intravenous injection of a substance or combination of substances sufficient to cause death. The lethal injection shall continue until the prisoner is dead.
>
> (b) Prisoners who receive a death sentence prior to March 31, 1998, shall choose the method of execution described in paragraph (a) of this subsection or the method of execution known as electrocution, which shall consist of passing through the prisoner's body a current of electricity of sufficient intensity to cause death as quickly as possible. The application of the current shall continue until the prisoner is dead. If the prisoner refuses to make a choice at least twenty (20) days before the scheduled execution, the method shall be by lethal injection.

KRS 431.220. The statute establishes lethal injection as the presumptive method of execution, although prisoners like Wilson who were convicted before March 31, 1998, may choose electrocution if they do so at least 20 days before their scheduled execution.

On July 28, 2004, Wilson signed his name to a "group grievance" filed by himself and other death row inmates, which asserted that "the drugs, the amounts of drug and the timing of the drugs" under the Kentucky Department of Corrections' "Policies, Procedures, and Protocols" are "wrong thus making the way lethal injection is performed is criminal and violates the Inmates Civil Rights."

2

The grievance also expresses concern regarding the use of nonmedical staff and problems presented by inmates with compromised veins. The grievance was rejected as presenting a non-grievable issue on July 26, 2004.

Wilson filed his Complaint in this case on November 21, 2007. In it, he asserts that the protocol which Kentucky will use to carry out his death sentence by lethal injection presents an unacceptable risk of unnecessary harm in violation of his right to be free from "Cruel and Unusual Punishments" under the Eighth Amendment to the Constitution of the United States. More specifically, he challenges each of the three drugs to be injected, the amount to be injected, and the timing of doing so; the sufficiency of the training and education of the persons who will be involved in the execution; and the refusal of state officials to provide him with more detailed information regarding the protocol.

## II. Discussion.

The Defendants contend that Wilson's Complaint should be dismissed because his claims are barred by the applicable statute of limitations, because Wilson did not timely and properly administratively exhaust some or all of his claims, and because his contentions are contrary to the Supreme Court's holding in *Baze v. Rees*, 128 S.Ct. 1520 (2008). Because the Court's resolution of the statute of limitations issue is dispositive of the claims in this case, it need not and does not reach the Defendants' second and third arguments.

In *Hill v. McDonough*, 126 S.Ct. 2096 (2006), the Supreme Court held that a death-sentenced inmate can challenge a state's intended method of carrying out his or her execution in a civil rights action pursuant to 42 U.S.C. § 1983 rather than through a habeas corpus petition under 28 U.S.C. § 2254. In doing so, the Supreme Court did not address related matters such as claim

3

accrual, ripeness, or the applicable statute of limitations. Because, by their nature, challenges to a lethal injection protocol invariably challenge conduct which will occur in the future - rather than in the past - such matters have proved problematic.

Nonetheless, several circuit courts of appeal, including the Sixth Circuit, adhere to the view that such lethal injection challenges are subject to the same statute of limitations considerations as other civil rights actions. *Cooey v. Strickland*, 479 F.3d 412 (6th Cir. 2007); *McNair v. Allen*, 515 F.3d 1168 (11th Cir. 2008). Civil rights claims arising out of conduct occurring in Kentucky are subject to the one-year statute of limitations for residual tort claims found in KRS 413.140(1)(a). *Collard v. Kentucky Board of Nursing*, 896 F.2d 179, 182 (6th Cir. 1990); *University of Kentucky Bd. of Trustees v. Hayse*, Ky., 782 S.W.2d 609, 613 (1989). The statute typically begins to run when a plaintiff becomes aware of facts which would indicate to a layperson that he or she should act to protect her rights. *Collyer v. Darling*, 98 F.3d 211, 220 (6th Cir. 1996); *Kelly v. Burks*, 415 F.3d 558, 561 (6th Cir. 2005); *Dixon v. Anderson*, 928 F.2d 212, 215 (6th Cir. 1991).

The Sixth Circuit, applying this general rule of claim accrual to the context of method-of-execution claims, has held that a challenge to a lethal injection protocol as cruel and unusual - on whatever grounds - accrues once the state that convicted the inmate has completed its direct review of his conviction and the plaintiff knows or has reason to know about the act providing the basis of his or her injury. *Cooey v. Strickland*, 479 F.3d 412, 418-19 (6th Cir. 2007) ("[setting] the accrual date at the conclusion of direct review by the state ... is also an attractive choice because it marks the point at which the state has rendered its criminal judgment final and, absent collateral civil proceedings, the point at which the state sets the execution date. Furthermore, the death-sentenced inmate can file suit and obtain relief."). In *Cooey*, however, the inmate's conviction became final

4

*before* Ohio had adopted lethal injection as a permissible means of execution in 1993 or as the required means of execution in 2001. Because "Cooey obviously could not have discovered the 'injury' until one of these two dates," the Sixth Circuit held that his claim accrued on one of these two dates, but did not decide the issue because the claim was time-barred under either approach. *Cooey*, 479 F.3d at 422.

Wilson argues that *Cooey* does not mandate a particular result in this case because, unlike the Ohio statute which required executions in 2001 and beyond to be carried out by lethal injection, the Kentucky statute vests him with the right to choose between lethal injection and electrocution at any time up to 20 days before his scheduled execution. [Record No. 28 at pg. 5] According to Wilson, the potential that he might choose electrocution at some point in the future rendered any challenge to the lethal injection protocol unripe until the very moment he renounced his right to choose electrocution in the amended complaint he filed in this action. [Record No. 28 at pg. 6; Record No. 3 at ¶82]

As a threshold matter, Wilson cites *Cooey* for a proposition which the Sixth Circuit expressly declined to decide: while *Cooey* indicates that a method-of-execution challenge to lethal injection accrues ***no later than*** when that method becomes the exclusive one by which executions are carried out, it left open the question whether such a claim accrued in fact far earlier, when lethal injection became an optional, rather than required, method of execution. *Cooey*, 479 F.3d at 422. If the latter approach were applied, Wilson's claim accrued in 1998 when the Kentucky legislature adopted lethal injection as the presumptive method of execution even though he had not made an election under

5

KRS 431.220(1)(b), and his claims would unquestionably be time barred.[1]

Wilson also appears to uncritically intermingle notions of accrual and ripeness, two distinct legal concepts. With respect to accrual, *Cooey* teaches that a lethal injection claim has accrued once a state has completed direct review of the inmate's conviction, which occurred in Wilson's case in 1993, and once the inmate has reason to know of the act giving rise to the claim. *Cooey*, 479 F.3d at 422. In *Cooey*, the Sixth Circuit held that the "act giving rise to the claim" was Ohio's adoption of lethal injection as a method of execution, whether in the alternative or as the exclusive means. Wilson argues for a radical departure from this holding, asserting in essence that the act which will give rise to the justiciability of his claim will be his own act, when and if he decides to perform it, of definitively choosing between lethal injection and electrocution for purposes of KRS 431.220.

Wilson is of course correct that "[r]ipeness becomes an issue when a case is anchored in future events that may not occur as anticipated, or at all." [Record No. 28 at pg. 5] (*quoting Cleveland Branch, N.A.A.C.P. v. City of Parma, OH*, 263 F.3d 533 (6th Cir. 2001)). This concern is present in all lethal injection litigation up until the point the claims are either deemed meritorious warranting relief or the inmate is executed. However, the potential that the future actions challenged may not come to pass presents a **concern** regarding ripeness, it does not *ipso facto* render the claims unripe. Rather, when faced with such a possibility, the court must still decide whether

---

[1] Further, Wilson's argument, if accepted, might prove too much. Wilson contends that a Kentucky death-sentenced prisoner's affirmative election between execution by lethal injection or electrocution is the *sine qua non* for a method-of-execution claim to become ripe. As a legal matter, this assertion is contrary to the well-established law cited by Wilson in his own brief. As a factual matter, Wilson's assumption that he may make the election permitted by KRS. 431.220(1)(b) in an amended complaint filed with a federal court, as opposed to a formal written declaration, signed by him and submitted to the Kentucky Department of Corrections, is speculative at best. While the statute is silent on the time, manner, specificity, or revocability of giving notice of the election, it is far from clear that his present statement of a future intent to not invoke his right to an election satisfies the statute or is otherwise enforceable. If it is not, then even under Wilson's view, his own lethal injection claims remain unripe, and this matter would have to be dismissed without prejudice for lack of subject matter jurisdiction.

6

to proceed in the face of that risk. As the Sixth Circuit has explained:

> In ascertaining whether a claim is ripe for judicial resolution, we ask two basic questions: (1) is the claim "fit[ ] ... for judicial decision" in the sense that it arises in a concrete factual context and concerns a dispute that is likely to come to pass? and (2) what is "the hardship to the parties of withholding court consideration"?

*Warshak v. United States*, 532 F.2d 521, 525 (6th Cir. 2008) (*citing Abbott Labs. v. Gardner*, 387 U.S. 136, 149 (1967). As did the Sixth Circuit in *Cooey*, the Court finds no reason to definitively establish a particular point in time when Wilson's lethal injection claims presented a ripe controversy, except to conclude that such time occurred no later than when Wilson participated in a group grievance challenging the lethal injection protocol on constitutional grounds in 2004, if not earlier when Kentucky fixed lethal injection as the presumptive method of execution in 1998.

Wilson's claims regarding the constitutionality of the lethal injection protocol certainly involved "a dispute that is likely to come to pass" when Kentucky adopted that method as the presumptive means of execution in 1998. While Wilson's retained right to choose electrocution rendered his execution by lethal injection less than a "certainty," it certainly remained "likely" under a statute which established lethal injection as the default method in the absence of an affirmative election by the death-sentenced inmate.

Further, the dispute arose in a "concrete factual context" certainly no later than 2004 when Wilson asserted in his group grievance that specific aspects of the protocol - including the identity, amount, and timing of the drugs and the qualifications of those who would administer them - rendered the protocol unconstitutional. There is no question that the factual basis for Wilson's claims was sufficiently developed no later than that juncture to present a live, ripe controversy for adjudication.

As a final matter, ordinarily, when a defendant challenges a plaintiff's claim on ripeness grounds as brought too early, the court enquires into whether withholding consideration of the merits will cause an unnecessary hardship on the parties, particularly the plaintiff. *Abbott Labs*, 387 U.S. at 149. In this context, where the roles are essentially reversed, it is appropriate to consider whether delaying consideration of the merits on ripeness grounds will cause an unnecessary hardship on the parties, particularly the defendant. Kentucky's statute permits an inmate sentenced to death before March 31, 1998, to make an election between alternative methods of execution at any time prior to 20 days before the execution is scheduled. In this regard, the Court is mindful of "the State's strong interest in enforcing its criminal judgments without undue interference from the federal courts." *Hill v. McDonough*, 126 S.Ct. 2096 (2006). The Court is thus not inclined to adopt Wilson's proposed analysis of ripeness, which would permit, and under the Defendants' construction of the statute prevent, the assertion of a claim, let alone its consideration and adjudication, until 20 days before a scheduled execution. As a practical matter, Wilson's proposed rule would require the entry of a stay of execution in all cases in order to give adequate time for consideration of the merits. In contrast, the Court's analysis would promote, rather than undermine, "[the] strong equitable presumption against the grant of a stay where a claim could have been brought at such a time as to allow consideration of the merits without requiring entry of a stay," *Nelson v. Campbell*, 541 U.S. 637, 650 (2004). The Court must therefore conclude that Wilson's lethal injection claims accrued when Kentucky adopted lethal injection as the presumptive method of execution, and became ripe for adjudication either at that time or no later than the denial of his 2004 group grievance.

Other courts considering like claims are in accord with this conclusion. With respect to accrual, under similar facts the court in *Henley v. Little*, 2009 WL 311139 (M.D. Tenn 2009),

concluded that under *Cooey*, a death-sentenced inmate's challenge to Tennessee's lethal injection protocol accrued on March 30, 2000, when lethal injection became Tennessee's presumptive method of execution, in a statute functionally identical to Kentucky's. *Id.* at \*\*3-4. With respect to ripeness, in *Poland v. Steward*, 117 F.3d 1094 (9th Cir. 1997), a death-sentenced Arizona inmate challenged the constitutionality of execution by lethal gas and by lethal injection, two methods from which the inmate could choose under the applicable Arizona statute. Because the statute established lethal injection as the presumptive method of execution and the inmate had not made an affirmative election to be executed instead by lethal gas, the Ninth Circuit found his challenge to execution by lethal gas unripe. *Poland*, 117 F.3d at 1104. In contrast, apparently finding no ripeness concern in addressing his challenge to lethal injection, the presumptive method of execution, the Ninth Circuit addressed the claim on the merits and rejected it. *Id.* at 1105; *see also Jones v. Allen*, 485 F.3d 635, 639 n.2 (11th Cir. 2007).

Pursuant to Federal Rule of Civil Procedure 25(d), current Commissioner of the Kentucky Department of Corrections LaDonna Thompson is **SUBSTITUTED** as a party defendant and former Commissioner John D. Rees is **DISMISSED** as a party to this action, and current Governor Steve Beshear is **SUBSTITUTED** as a party defendant and former Governor Ernie Fletcher is **DISMISSED** as a party to this action.

III. <u>Conclusion.</u>

Accordingly, **IT IS ORDERED** that:

1. Defendants' Motion to Dismiss, or in the alternative, for Judgment on the Pleadings [Record No. 25] is **GRANTED**, and Wilson's Complaint [Record No. 1] is **DISMISSED WITH PREJUDICE**.

2. The Court will enter an appropriate Judgment.

Dated this 30th day of September, 2009.

Signed By:
*Karen K. Caldwell* KKC
United States District Judge